IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------- :
UNITED STATES OF AMERICA        : CASE NO. 1:04 CR 503
                                :
                    Plaintiff   :
                                :
         -vs-                   : MEMORANDUM OF OPINION AND
                                : ORDER GRANTING IN PART AND
                                : DENYING IN PART DEFENDANT'S
STEPHEN S. TENNEY               : MOTION TO SUPPRESS
                                :
                    Defendant   :
------------------------------------------------- :

UNITED STATES DISTRICT JUDGE LESLEY WELLS

Before the Court is defendant Stephen S. Tenney's ("Tenney") motion to suppress all firearm evidence seized from his person and the vehicle he was operating at the time Officers Scott Pflug ("Pflug") and Scott Thompson ("Thompson") of the Brookfield Township Police Department stopped Mr. Tenney for driving with stolen license plates. Mr. Tenney also moved to suppress any oral and written statements he made to the Officers in the course of his arrest at the scene on 27 July 2004. (Docket #12). The government provided a brief in opposition. (Docket #14).

At a suppression hearing on 2 May 2005, the Court heard argument from counsel and testimony from Officers Pflug and Thompson regarding the events surrounding Mr. Tenney's arrest. Mr. Tenney seeks to suppress a fully-loaded .32 caliber semi-automatic handgun retrieved by the Officers during the traffic stop, and a statement made by the defendant admitting to ownership of the firearm. Mr. Tenney argues the Officers did not

possess the probable cause necessary to effect the traffic stop and elicited his confession while he was in custody without informing him of the Miranda warnings. The government maintains the Officers found the handgun, which Mr. Tenney voluntary admitted to owning, outside of the vehicle on the ground.

Based on the evidence adduced at the hearing and the relevant law, this Court grants defendant's motion to suppress his statement pursuant to Rhode Island v. Innis, 446 U.S. 281, 300-01 (1980), and denies defendant's motion to suppress the firearm pursuant to California v. Hodari D., 499 U.S. 621, 629 (1991).

## I. FACTUAL BACKGROUND

The court has gleaned the following facts from the evidence submitted. On 27 July 2004, at approximately 10:00 p.m. Officers Pflug and Thompson observed a white Chrysler New Yorker driven by defendant Tenney. (Tr. at 4, 12, 29). The vehicle's broken tail-light and "fresh damage" drew the Officers' attention. (Tr. at 4). A routine check of the registration by the dispatcher indicated the license plate as reported stolen out of Pennsylvania. (Tr. at 4, 13). After receiving the dispatcher's report the Officers decided to stop the vehicle. (Tr. at 13).

Officer Pflug activated the police car's overhead lights but Mr. Tenney failed to yield. (Tr. at 30). Officer Thompson then activated the siren as Mr. Tenney increased his speed, estimated by the officers at up to 90 miles per hour. (Tr. at 5, 30). The pursuit of Mr. Tenney continued for approximately five miles until the defendant lost control of his vehicle

2

and left the roadway, plowing through a residential backyard and coming to a rest against some brush and tree limbs. (Tr. at 6, 8).

The officers were immediately behind Mr. Tenney when he left the road and they pulled up behind his vehicle. With their guns drawn, the Officers approached the vehicle with Officer Pflug coming up along the driver's side of the vehicle and Officer Thompson remaining behind Mr. Tenney's car. (Tr. at 16). Both Officers noted that Mr. Tenney had already opened his car door prior to their approach and had stuck his hands out. (Tr. at 31). The Officers then removed him from the car, placed him in handcuffs and began identification procedures. (Tr. at 7). After discovering a warrant for Mr. Tenney issued by the U.S. Marshal Service in Virginia, the Officers placed the defendant into the back of their squad car. (Tr. at 7). Mr. Tenney did not receive any Miranda warnings from Officers Pflug or Thompson at the scene.[1] (Tr. at 49).

After placing Mr. Tenney in their squad car, the Officers summoned a tow truck to remove the damaged vehicle. (Tr. at 41). The tow-truck driver noticed a firearm on the ground near the driver's headlight while attempting to dislodge Mr. Tenney's vehicle from the brush and trees. (Tr. at 23-4, 36). The tow-truck driver picked up the gun, then left the gun where he found it and notified Officer Thompson. (Tr. at 21, 36). Both Officers testified they did not witness Mr. Tenney discard the handgun, noting the rural setting was

---

[1] This evidence is contrary to the government's assertion in its brief in opposition to the suppression motion, which indicated Mr. Tenney had received his Miranda warnings. (Govt's Brief at 2).

3

not well illuminated and the police lights were focused on the interior of the defendant's vehicle. (Tr. at 26, 35, 39).

Prior to the arrival of the tow-truck, the Officers had removed their police car from the yard, parking it in the residential driveway some distance from Mr. Tenney's car. (Tr. at 32). After retrieving the gun, Officer Thompson brought it to Officer Pflug who walked back to the police car alone to unload the handgun. (Tr. at 32). With Mr. Tenney handcuffed in the passenger's side of the back seat of the squad car, Officer Pflug sat down in the passenger's side of the front seat to empty the gun and commented directly to the defendant, "Look what we found." (Tr. at 32, 33, 43). When questioned at the hearing regarding Mr. Tenney's response to Officer Pflug's directed comment, the following colloquy occurred between the Officer and defendant's counsel:

Q. Okay. What were his exact words?

A. I don't recall the -- the exact verbiage that he used.

Q. Did he say that was -- that was my firearm?

A. I believe the verbiage as my recollection is, that is my firearm -- hold on one second. Let me try to remember it exactly. I think it was -- yeah, " That is my firearm."

Q. And that was a statement, he responded to your question or your statement and he responded in saying that was his firearm and used the word firearm?

A. I believe he said gun.

Q. Well, what is it, either firearm or gun?

A. Well I'm using the term firearm because that's the correct terminology. I believe he --

Q. I'm asking you what the man said. So tell us what he said.

4

>    A.   That is my gun.
>
>    Q.   He said that is my gun?
>
>    A.   Correct.
>
>    Q.   He didn't say that's my firearm?
>
>    A.   No.
>
>    Q.   And of course you wrote that down, didn't you?
>
>    A.   No, I did not.
>
>    Q.   You made no report of the fact that this man, who supposedly had thrown a gun out of a window to deceive you had then admitted it, and you never wrote anything down about that?
>
>    A.   No, I did not.
>
>    Q.   Okay. So you're relying on your memory of what was said?
>
>    A.   Yes.

(Tr. at 43, 44).[2]  After securing the scene of the accident , the Officers transported Mr. Tenney to the Brookfield Township Police Station.  (Tr. at 24).

On 29 September 2004, the government filed a one-count indictment against Mr. Tenney for felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1); the defendant having previously been convicted of aggravated burglary in Ohio state court on 7 December 1995.  (Docket #1).

## II. LAW AND ANALYSIS

---

[2] In its brief in opposition, the government related that Mr. Tenney "told officers that he threw the firearm from the vehicle when he was stopped." (Govt's Brief at 2).

5

The Fourth Amendment states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated,...." U.S. Const. amend. IV. This protection extends to the unreasonable seizure of persons, California v. Hodari D., 499 U.S. 621, 624 (1991), and "belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs," Terry v. Ohio, 392 U.S. 1, 8-9 (1968). Of course, the Fourth Amendment does not prohibit all seizures, only those that are unreasonable. Id. at 9.

### A. Probable Cause to Stop Mr. Tenney's Vehicle.

When an officer stops a vehicle for a traffic violation, he or she must have probable cause. See Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). So long as an officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not a violation of the Fourth Amendment even if it is pretextual; the officer's motive is irrelevant. United States v. Ferguson, 8 F.3d 385, 391 (6th Cir.1993). However, not every minuscule violation of the law will constitute probable cause. United States v. Freeman, 209 F.3d 464, 466 (6th Cir.2000) (single isolated incident of motor home partially weaving into emergency lane for a few feet and an instant in time did not amount to failure to keep the vehicle within a single lane as nearly as practicable, in violation of Tennessee law, and thus did not establish probable cause of a traffic violation that would warrant invasion of occupants' Fourth Amendment rights via a traffic stop.). Cf. United States v. Johnson, 242 F.3d 707, 709 (6th Cir.2002) (where a hole in defendant's tail-light was significant, officers had probable cause to believe that the

6

condition of the tail-light violated the Tennessee statutory requirement that a tail-light be "in good condition," and thus the decision to stop the vehicle did not violate defendant's Fourth Amendment right to be free of unreasonable search and seizure).

The officers' had probable cause to stop Mr. Tenney. According to the Officers' testimony, they were initially alerted to the vehicle due to its broken tail-light and "fresh damage." (Tr. at 4). Officer Thompson related the policy of the township to stop a vehicle if it had a broken tail-light. (Tr. at 14). Under this Circuit's reading of state vehicle regulations in United States v. Johnson, supra, that condition alone provided the necessary probable cause for the officers' to stop Mr. Tenney, pursuant to O.R.C. § 4513.05, which requires that every motor vehicle have a working tail-light.

Moreover, the Officers did not decide to stop Mr. Tenney and did not activate their lights and siren until they found that his vehicle's license plates were reported as stolen. (Tr. at 4). The reported stolen plates provided the officers with probable cause to stop Mr. Tenney's vehicle. See U.S. v. DeMasi, 40 F.3d 1306, 1312 (1st Cir. 1994) (probable cause to stop a vehicle arises when the officers identify the vehicle as bearing stolen license plates); U.S. v. Aikens, 2001 WL 1287491, *5 (E.D.Pa.,2001) (officers had probable cause to stop a vehicle with stolen license plates and expired registration).

### B. The "Seizure" of Mr. Tenney's Firearm.

The Fourth Amendment protects persons and their possessions from unreasonable searches and unreasonable seizures. United States v. Avery, 137 F.3d 343, 348 (6th Cir.1997). Mr. Tenney argues that evidence regarding the firearm should be suppressed

because the officers had no reasonable suspicion to approach, follow, or chase him. While the officer did have reasonable suspicions concerning Mr. Tenney as the vehicle's plates were reported stolen, the Court need not assess that reasonableness because no "seizure" occurred within the meaning of the Fourth Amendment when either the tow-truck operator or Officer Thompson retrieved the handgun from near the front of Mr. Tenney's vehicle.[3] In California v. Hodari D., 499 U.S. 621, 629, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the Supreme Court held that anything that a suspect discards while fleeing from police may be used as evidence of guilt because it is not the fruit of a seizure. Seizure occurs under the Fourth Amendment either where there is an application of physical force, however slight, or submission to an officer's show of authority to restrain the suspect's liberty. Like the defendant in Hodari, Mr. Tenney remained untouched by the officers at the time he discarded the firearm. Activating the lights and siren may have been a show of authority, but there was no seizure because Mr. Tenney continued to flee. Id. at 625-26. See also United States v. Williams, 949 F.2d 220, 222 (6th Cir.1991) (officers yelling "halt" and chasing defendant was not a "seizure" until defendant was stopped and arrested); United States v. Barker, 69 Fed.Appx. 208, Slip Copy, 2003 WL 21259678 (6th Cir. 2003) (finding suppression unwarranted where officers had not seized defendant until after he had discarded his gun over a fence during a back-yard foot-chase).

---

[3]Defendant's counsel proposes the tow-truck operator was a state actor for purposes of finding the gun in question because he was summoned by the Officers on state business. (Tr. at 48). The Court need not address that proposition where, as here, the retrieved handgun was not "seized" from the defendant but seemingly discarded and in the possession of no one individual.

8

Accordingly, introducing the firearm evidence does not violate Mr. Tenney's Fourth Amendment right to be free from unreasonable searches and seizures.

### C. The Voluntariness of Mr. Tenney's Statement

The government bears a "heavy burden" to show a suspect's waiver of rights was knowing and intelligent. Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) (concluding "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his [rights]"). The Supreme Court has stated, "[s]ince the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." Miranda, 384 U.S. at 475, 86 S.Ct. 1602. The government has the burden of proof as to the waiver by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). This means the government must establish that it was more likely than not that a defendant was read his Miranda rights and acknowledged that he had a right to remain silent. "Any statement given freely and voluntarily without any compelling influences is . . . admissible evidence." Miranda, 384 U.S. at 478.

The decision in Miranda also implores the Court to recognize that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Id. 384 U.S. at 444. The

9

interrogation of a suspect in custody who has not received the Miranda warnings is "presumed compelled." Oregon v. Elstad, 470 U.S. 298, 317 (1985). In Miranda, the Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda, 384 U.S. at 444.

Mr. Tenney was clearly in custody and had not received his Miranda warnings at the time of his alleged response to Officer Pflug's comment. This Court must then consider whether Officer Pflug's statement amounted to an unconstitutional interrogation of Mr. Tenney.[4] The Supreme Court directs Courts to consider interrogation broadly as "express questioning and its functional equivalent." Rhode Island v. Innis, 446 U.S. at 301. More precisely, interrogation in contravention of the Miranda safeguards refers "to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Id.; see also Pennsylvania v. Muniz, 496 U.S. 582, 601 (1990) (explaining the necessity for courts to assess from the defendant's perspective the reasonable likelihood of eliciting an incriminating response).

As our Circuit has observed, when construing whether an interrogation has occurred, "courts should carefully scrutinize the factual setting of each encounter [as] even

---

[4]Defendant does not contest the government's assertion that he uttered an admission in response to Officer Pflug's comment. However, this Court does take note that the record was less than clear in that regard. Officer Pflug had some difficulty recalling exactly how Mr. Tenney responded and neither Officer recorded Mr. Tenney's relatively central admission in their police report.

a relatively innocuous series of questions may, in light of the factual circumstances and the susceptibility of a particular suspect, be reasonably likely to elicit an incriminating response." United States v. Avery, 717 F.2d 1020, 1025 (6th Cir. 1983); United States v Williams, 282 F.Supp.2d 586, 596 (E.D. Mich. 2003) (finding improper interrogation where Officer should have known that his question was reasonably likely to elicit an incriminating response from the defendant); cf United States v. Hendricks, 116 Fed. Appx. 684, 688, 2004 WL 2671741 (6th Cir. 2004) (unpublished) (not finding interrogation where defendant made a voluntary statement regarding ownership of a gun after one officer commented directly to another officer that he had found a gun; relying on United States v. Crowder, 62 F.3d 782 (6th Cir. 1995) where defendant drew the attention of a police officer when he "pecked" at the squad car window in order to direct the officer to where the gun was located).

Pursuant to the standard etched out in Innis, this Court construes Officer Pflug's comment as an improper interrogation of Mr. Tenney. Put more precisely, Officer Pflug should have known his pointed comment, with the gun in hand, "Look what we found," directed at the custodial defendant while the two shared the squad car alone, was reasonably likely to garner an incriminating response. Thus, under the totality of the circumstances, Officer Pflug's custodial interrogation yielded an involuntary response from Mr. Tenney. Accordingly, Mr. Tenney's admission shall be suppressed as having been compelled.

11

### **III. CONCLUSION**

For the reasons discussed above, defendant's motion to suppress his statement is granted, but his motion to suppress the firearm is denied.

IT IS SO ORDERED.

       /s/Lesley Wells
UNITED STATES DISTRICT JUDGE

Dated: <u>9 May 2005</u>